**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar. No. 320783)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        jsmith@bursor.com
        fklorczyk@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA LABAJO and MARY YOON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br>CAPITAL ONE BANK (USA), N.A., CAPITAL ONE N.A., and CAPITAL ONE FINANCIAL CORPORATION<br><br>Defendants. | Case No.  5:19-cv-1431<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs Christina Labajo and Mary Yoon brings this action on behalf of themselves and all others similarly situated against Defendants Capital One Financial Corporation, Capital One, N.A., and Capital One Bank (USA), N.A. (collectively, "Capital One" or "Defendants"). Plaintiffs make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1. Plaintiffs bring this class action against Defendants for their failure to secure and safeguard personal identifying information ("Private Information"), which was wrongfully disclosed in a March 2019 data breach (the "Data Breach"). The Private Information disclosed in the Data Breach includes bank account numbers, fragments of transaction history, personal income, credit scores, social security numbers, names, home address information, phone numbers, email addresses, and dates of birth. The Data Breach affects approximately 100 million United States citizens.

## PARTIES

2. Plaintiff Christina Labajo is, and at all times mentioned herein was, a resident of Ontario and a citizen of California. Plaintiff has a credit card issued by Capital One. As a result, Capital One collected and stored Plaintiff's Private Information in connection with issuing its card to Plaintiff. On information and belief, Plaintiff's Private Information was disclosed in the Data Breach. The Data Breach and disclosure of Private Information has immediately, directly, and substantially increased Plaintiff's risk of identity theft. As a result of the Data Breach, Plaintiff also has suffered a loss of privacy and nuisance; and must now expend time, energy and money mitigating the threat of identity theft that would not be necessary but for the Data Breach.

3. Plaintiff Mary Yoon is, and at all times mentioned herein was, a resident of Corona and a citizen of California. Plaintiff has a credit card issued by Capital One. As a result, Capital One collected and stored Plaintiff's Private Information in connection with issuing its card to Plaintiff. On information and belief, Plaintiff's Private Information was disclosed in the Data Breach. The Data Breach and disclosure of Private Information has immediately, directly, and substantially increased Plaintiff's risk of identity theft. As a result of the Data Breach, Plaintiff also has suffered a loss of privacy and nuisance; and must now expend time, energy and money mitigating the threat of identity theft that would not be necessary but for the Data Breach.

4. Defendant Capital One, N.A., is a national bank with its principal place of business in McLean, Virginia. Defendant Capital One, N.A. is a wholly-owned subsidiary of Capital One Financial Corporation.

5. Defendant Capital One Bank (USA), N.A., is a national bank with its principal place of business in McLean, Virginia. Defendant Capital One Bank (USA), N.A. is a wholly- owned subsidiary of Capital One Financial Corporation.

6. Defendants Capital One, N.A. and Capital One Bank (USA), N.A offer banking and lending products and services to consumers and businesses, and issue numerous types of credit cards for use by consumers and businesses.

7. Defendant Capital One Financial Corporation is a Delaware corporation with its principal place of business in McLean, Virginia. Capital One Financial Corporation is a bank holding company specializing in credit cards, auto loans, banking and savings accounts.

8. There exists, and at all times herein existed, a unity of ownership between each Defendant and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. More specifically, the Defendants communicate and coordinate with each other concerning virtually all

aspects of storing and securing Private Information of Capital One credit card users, and they follow uniform policies and procedures and utilized the same inadequate data security measures. Every allegation of wrongdoing contained herein applies equally to each of the Defendants.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, as well as jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from the Defendants.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because a substantial part of the events giving rise to the claims occurred in this District.

11. This Court has personal jurisdiction because Defendants do business in this District and a substantial part of the events and injury giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS

**A.    The March 2019 Data Breach**

12. Defendant Capital One Financial Corporation, through its subsidiaries, including Defendants Capital One, N.A., and Capital One Bank (USA), N.A., is one of the largest credit-card issuers in the United States.

13. On July 29, 2019, Capital One Financial Corporation publicly announced the following on behalf of itself and Defendants Capital One, N.A. and Capital One Bank (USA), N.A:

> [O]n July 19, 2019, [Capital One] determined there was unauthorized access by an outside individual who obtained certain types of personal information relating to people who had applied for its credit card products and to Capital One credit card customers . . . . [T]his event

affected approximately 100 million individuals in the United States and approximately 6 million in Canada.

. . .

The largest category of information accessed was information on consumers and small businesses as of the time they applied for one of our credit card products from 2005 through early 2019.

14. The Private Information disclosed by the Data Breach included:

- ✓ Personal information such as names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, and personal income;

- ✓ Customer status data, *e.g.,* credit scores, credit limits, balances, payment history, contact information;

- ✓ Fragments of transactional data from a total of 23 days during 2016, 2017, and 2018;

- ✓ Approximately 140,000 Social Security numbers; and

- ✓ Approximately 80,000 linked bank account numbers of its secured credit card customers.

15. The Data Breach occurred on March 22 and 23, 2019, but was not discovered by Defendants until nearly four months later, on July 19, 2019.

16. Defendants did not discover the Data Breach as a result of their own policies or diligence. Instead, they discovered the Data Breach after an unknown individual sent the following email to Capital One providing a link to a file containing the leaked Private Information:

//
//
//
//
//

> **[External Sender] Leaked s3 data**
>
> ▮▮▮▮▮                                                          Wed, Jul 17, 2019 at 1:25 AM
> To: "responsibledisclosure@capitalone.com" <responsibledisclosure@capitalone.com>
>
> Hello there,
>
> There appears to be some leaked s3 data of yours in someone's github / gist:
>
> https://gist.github.com▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
>
> Let me know if you want help tracking them down.
>
> Thanks,
>
> ▮▮▮▮▮

**B.      Capital One Promised To Keep Private Information Secure**

17.     Capital One promises it is "committed to protecting your personal and financial information. If we collect identifying information from you, we will protect that information with controls based upon internationally recognized security standards, regulations, and industry-based best practices."

18.     Capital One also promises customers on its credit card applications that "Capital One uses 256-bit Secure Sockets Layer (SSL) technology.  This means that when you are on our website, the data transferred between Capital One and you is encrypted and cannot be viewed by any other party."

19.     Despite these promises, Defendants have had several security breaches in the past.  In 2018, for example, Capital One suffered a data breach that compromised 50GB of highly sensitive information that put Capital One's network at significant risk.

20.     As a financial institution, Capital One is subject to the Gramm-Leach-Bliley Act ("GLBA"), also known as the Financial Services Modernization Act of 1999.  Among other requirements, the GLBA requires financial institutions to explain their information sharing practices to their customers and to safeguard sensitive data.

21.     The primary data protection implications of the GLBA are outlined its Safeguards Rule, which requires financial institutions to create a

written information security plan describing the program to protect their customers' information. The information security plan must be tailored specifically to the institution's size, operations, and complexity, as well as the sensitivity of the customers' information. Under the Safeguards Rule, covered financial institutions must:

a. Designate one or more employees to coordinate its information security program;

b. Identify and assess the risks to customer information in each relevant area of the company's operation, and evaluate the effectiveness of the current safeguards for controlling these risks;

c. Design and implement a safeguards program, and regularly monitor and test it;

d. Select service providers that can and do maintain appropriate safeguards, and oversee their handling of customer information; and

e. Evaluate and adjust the program in light of relevant circumstances, including changes in the firm's business or operations, or the results of security testing and monitoring.

22. The Safeguards Rule also requires financial institutions to pay special attention to employee management and training, information systems, and security management in their information security plans and implementation.

23. Capital One broke its promises to its customers and failed to comply with the Safeguards Rule which, in turn, made the Data Breach possible. Had Capital One implemented adequate data security protocols, the Data Breach could have been avoided or significantly mitigated.

C. **Private Information Is "As Good As Gold" To Identity Thieves**

24. The Federal Trade Commission ("FTC") warns that Private Information like a person's "name, Social Security number, credit card numbers, or other financial

account information … is as good as gold" to identity thieves.  FTC, *Talking About Identity Theft: A How-To Guide*.

25. Once identity thieves have Private Information, they can use the information to drain bank accounts, run up credit cards, open new utility accounts or get medical treatment on the victim's health insurance.  Identity thieves also can use personal information to perpetrate immigration fraud; obtain a driver's license or identification card in the victim's name but with another's picture; obtain government benefits; or file a fraudulent tax return using the victim's information to obtain a fraudulent refund.  These types of fraudulent activities often are not discovered until many years after the fact.

26. Personal Information also is a commodity traded on the black market among identity thieves.

27. The risk of identity theft from data breaches is neither remote nor theoretical.  In 2013, for example, "1 in 4 data breach notification recipients became a victim of identity fraud."  2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters, available at https://www.javelinstrategy.com/coverage-area/2013-identity-fraud-report-data-breaches-becoming-treasure-trove-fraudsters.

28. Identity theft remains a significant problem in the United States, and more victims are personally paying out of pocket for fraud.  Annual monetary losses from identity theft are in the billions of dollars.

29. Victims of identity theft also must spend time and energy responding to the incident.  According to Department of Justice statistics, nearly one third of identity theft victims are forced to spend a month or more resolving problems, and in some cases their problems take more than a year to resolve.  U.S. Dept. of Justice, *Victims of Identity Theft*, 2012.  Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future

inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

## CLASS ACTION ALLEGATIONS

30. Plaintiffs seek relief in their individual capacity and as a representative of all others who are similarly situated. In accordance with Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a Nationwide Class and/or California subclass.

31. The Nationwide Class is defined as all persons residing in the United States whose Personal Information was exposed tin the Data Breach announced by Capital One on July 29, 2019 (the "National Class"). Plaintiffs reserve the right to seek certification of a narrower class or multiple state subclasses, as appropriate based on evidence uncovered in discovery.

32. The California Class is defined as all persons residing in California whose Personal Information was exposed tin the Data Breach announced by Capital One on July 29, 2019 (the "California Class").

33. Excluded from the Classes are Defendants; any of their corporate affiliates; any of their directors, officers, or employees; any persons who timely elects to be excluded from any of the Classes; any government entities; and any judge to whom this case is assigned and their immediate family and court staff.

34. The members of each Class are so numerous that the joinder of all members is impractical. Based on Defendants' statements about the scope of the Data Breach, each Class likely includes millions of people.

35. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual class members. These common questions of law and fact include, without limitation:

    a. Whether Defendants failed to adequately safeguard Plaintiffs' and class members' Personal Information;

     b. Whether Defendants acted negligently in failing to properly safeguard Personal Information;

     c. Whether Defendants violated the statutory and common law claims alleged herein;

     d. Whether class members are entitled to damages, civil penalties, punitive damages and/or injunctive relief as a result of Defendants' conduct;

     e. Whether Defendants unlawfully used, maintained, lost or disclosed Personal Information;

36. Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that their Private Information has been exposed without their authorization.

37. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.

38. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.

39. Plaintiffs are represented by counsel competent and experienced in the prosecution of consumer protection and tort litigation.

40. The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

41. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of

evidence, effort and expense if numerous individual actions. The benefits of proceeding as a class, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

## COUNT I

### Violation of California's Civil Code §§ 1789.81.5, 1798.82, 1798.83

42. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

43. Plaintiffs bring this claim on behalf of the putative California Class

44. California Civil Code § 1798.81.5 requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

45. The Private Information at issue here is "Personal information" within the meaning of Civil Code § 1798.80.

46. Plaintiffs and other Class members qualify as "Customer[s]" as defined in Civil Code § 1798.80, because they provided their personal information to Defendants.

47. Defendants violated Civil Code § 1798.81.5 by failing to maintain reasonable security procedures and practices, resulting in the compromise of Private Information in the Data Breach.

48. Defendants violated Civil Code §§ 1798.82 and 1798.83 by failing to promptly notify all people affected by the Data Breach that their Private Information had been acquired by an unauthorized person, or was reasonably believed to have been acquired by an unauthorized person.

49. As a result of Defendants' violations described here, Plaintiffs and class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in this Complaint.

50. Defendants' violations of Civil Code §§ 1798.81.5 and 1798.82 were willful, intentional or, at a minimum, reckless.

51. Plaintiffs seek, on behalf of themselves and class members, all relief permitted under Civil Code § 1798.84, including damages, statutory penalties, injunctive relief, and attorney's fees and costs.

## COUNT II
### Violation of California's UCL, Bus. & Prof. Code § 17200 *et seq.*

52. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

53. Plaintiffs bring this claim on behalf of the putative California Class.

54. Defendants engaged in unfair, fraudulent and unlawful business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

55. Plaintiffs and class members suffered an injury in fact and lost money or property because of Defendants' alleged violations of the UCL.

56. The acts, omissions, and conduct of Defendants as alleged constitute a "business practice" within the meaning of the UCL.

57. Defendants violated the unlawful prong of the UCL by violating the GLBA and; Civil Code Sections 1798.81.5 and 1798.82, as alleged above.

58. Defendants' acts, omissions, and conduct also violate the unfair prong of the UCL because they offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and other class members. The harm cause by Defendant's conduct outweighs any potential benefits attributable to such conduct and there were

reasonably available alternatives to further Defendant's legitimate business interests, other than Defendants' conduct described herein.

59. Defendants engaged in a fraudulent business practice that is likely to deceive a reasonable consumer by misrepresenting in its Privacy Policy that it had adequate measures to prevent data theft, and by failing to disclose that it does not adhere to industry-standard security practices. A reasonable person would find Defendants' misrepresentations and omissions material when deciding whether to agree to use Defendants' services and provide them with Private Information.

60. As a result of Defendants' violations of the UCL, Plaintiffs and class members are entitled to injunctive relief and restitution of all funds Defendants acquired as a result of its unfair competition, including fees that Defendants charged in connection with their credit card services.

## COUNT III

### Negligence / Negligence Per Se

61. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

62. Defendants owed a duty to Plaintiffs and class members, who were required to provide their Private Information to Defendants in order to use its services. Defendants created a duty through their voluntary actions in collecting and storing the Private Information for their own benefit, as well as by their assurances (in its Privacy Policy and elsewhere) that it would safeguard that information.

63. Defendants' duty required them, among other things, to design and employ cybersecurity systems, anti-hacking technologies, and intrusion detection and reporting systems sufficient to protect Private Information from unauthorized access and to promptly alert its users of data breaches.

64. Defendants also had a duty to delete any Private Information that was no longer needed.

65. Defendants breached their duties by, among other things: failing to maintain appropriate technological and other systems to prevent unauthorized access; failing to minimize the Private Information that any intrusion could compromise; failing to detect the Data Breach in a timely manner; failing to promptly notify Plaintiffs and class members of the Data Breach.

66. Defendants' breaches of their duties provided the means for third parties to access, obtain, and misuse the Private Information of Plaintiffs and the class members without authorization. It was reasonably foreseeable that such breaches would expose the Private Information to criminals and other unauthorized access.

67. But for Defendants' breach of duties, class members' Private Information would not have been compromised in the Data Breach.

68. As a result of Defendants' negligence, Plaintiffs and class members suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and class members must more closely monitor their financial accounts and credit histories to guard against identity theft and misuse of their Private Information. Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft.

69. Defendants' violations of California's Civil Code §§ 1789.81.5, 1798.82, 1798.83, are negligence *per se*.

70. The damages to Plaintiffs and other class members were a proximate, reasonably foreseeable result of Defendants' breaches of its duties. Plaintiffs and class member are entitled to damages in an amount to be proven at trial.

## COUNT IV

### Unjust enrichment

71. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

72. Defendants knowingly and deliberately enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to increase their own profits at the expense of Plaintiffs and class members by utilizing cheaper, ineffective security measures. Plaintiffs and class members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security.

73. Plaintiffs and class members suffered and will continue to suffer injuries in the form of identity theft, attempted identity theft, the expense in mitigating harms, loss of privacy, and nuisance.

74. By this cause of action, Plaintiffs seeks restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment as follows:

A. For an order certifying the Nationwide Class and/or California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as Class and Subclass representatives; and naming Plaintiffs' attorneys as Class Counsel representing the Class and Subclass members;

B. For an order finding in favor of Plaintiffs, the nationwide Class, and California Subclass on all counts asserted herein;

C. For an order awarding compensatory damages, statutory damages and/or restitution in amounts to be determined by the Court and/or jury;

D. For injunctive relief enjoining the illegals acts detailed herein;

E. For prejudgment interest on all amounts awarded;

F. For an order awarding reasonable attorneys' fees and expenses and costs of suit;

G. Such other or further relief as the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: August 1, 2019            Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     */s/ Joel D. Smith*
              Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar. No. 320783)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
            jsmith@bursor.com
            fklorczyk@bursor.com

*Attorneys for Plaintiffs*